on her starboard tack. This testimony, by the claimant's sailing master, shows the distance in question to have been greater than the claimant supposes. So also Mr. Brooks says, that if the Volante, when she was two or three points on the Clytie's starboard bow, had luffed, there would have been no collision. If there was room for the Volante, being between the Clytie and the tow, and about fifty feet ahead, to bear two or three points on the Clytie's starboard bow and there luff, clearly the distance between the Clytie and the tow was more than one hundred feet.

In addition to these facts, proved by the claimant's own witnesses, there is the fact stated by the mate of the Active, a yacht to the leeward of the Clytie, that his yacht on her port tack passed the Clytie's stern when the Clytie was head to the wind, and went several lengths further to westward, and then tacked in the wake or rather to eastward of the wake of the last boat of the tow. It is true that this same witness says that the Clytie went close to the tow and near as he would dare to go, but his opinion is overthrown by his act, for he went with his own boat at the least one hundred and fifty feet nearer the line of the tow than the Clytie did. The Clytie having the ability, as she herself shows, to come to wind within twenty-five feet of the tow, and the position requiring that she should be only some six feet nearer the tow than she was, to enable her to clear the Volante, the facts above mentioned plainly show that the Clytie had room to tack at the tow without coming in contact with either the Volante or the tow. This conclusion is decisive of the controversy, for it follows that the Volante having by accident or design—and it matters not which—left room for the Clytie to come to the wind without hitting either the Volante or the tow, was guilty of no fault, and that the fault which caused the collision was the failure of the Clytie to go as near to the tow as she could with safety.

Another fault has been strongly urged against the Clytie, namely, that after she had come head to wind and when she saw the Volante gathering way across her bows and likely to be caught in passing, she did not swing to westward the six feet that was needed to avoid collision.

The Clytie's sailing master upon this point testifies that when his vessel was within a point of head to wind he steadied his helm and kept it steady a few seconds, and when he was head to wind he ported his helm a little. There may be room for the surmise that putting the helm hard-a-port at that time would have caused a failure to tack; but no witness, as I recollect, has testified that such a result would have been likely to follow such a movement of the helm. The only excuse for not putting the helm hard-a-port instead of porting it a little, given by the sailing master, is that the vessel's headway was then slow and the helm had no effect. But this excuse cannot be received in the face of the specific statement in the answer that at the time of the collision the vessel was going fast enough to steer well. It should also be noticed in this connection, as bearing upon this and other questions of the case, that these two vessels were yachts, subject of course to the sailing rules applicable to all sailing vessels, and to no other, but possessing ability to move rapidly and manoeuvre quickly, supposed to be fully equipped, and in the charge of skilful men. A prompt employment of their full capacity to avoid collisions may be justly required of such vessels in all cases of danger. What a yacht is willing to do for the purpose of winning a wager, she is in a case of necessity bound to do for the purpose of avoiding collision. While, therefore, it may be said to be requiring much of the Clytie to say that she could have avoided the collision by putting her helm hard-a-port after she had come head to wind, in view of the evidence and the answer, it is not easy to absolve her from fault in this respect.

There remains to consider the point made in behalf of the Clytie, that the Volante was in fault for not luffing up into the wind as soon as she filled on the starboard tack, and thus avoiding the Clytie, then coming head to wind. It is possible that the Volante, being a very quick vessel, could have done this. Such is the opinion of those on the Clytie. But whether the danger of collision then imminent would be lessened by luffing or keeping full on the part of the Volante was a close question. The decision made carried her within six feet of clear, and no one can say with certainty that by luffing she would have done better. It cannot, I think, be imputed to the Volante as a fault, that of two doubtful measures she adopted one that so nearly carried her clear.

I have now examined all the questions in this case as to which my opinion has been asked. The result of that examination is the conclusion that the collision mentioned in the libel was caused solely by the fault of the Clytie, and that the libellants are entitled to recover herein the damages sustained by reason thereof. There must therefore be a decree in favor of the libellants, with an order of reference to ascertain the amount.

---

## Case No. 2,914.

### The CLYTIE.

[The case reported in 8 Wkly. Notes Cas. 188, under the above title, is the same case as Peck v. Laughlin, Case No. 10,890.]

---

CLYTIE, The (HITCHCOCK v.). See Case No. 2,913.

COAL BARGES (JONES v.). See Case No. 7,458.